# EXHIBIT A

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

| | |
|---|---|
| **RHONI ROGER CASTELLON,**<br>Plaintiff,<br><br>v.<br><br>**GOOGLE LLC** and **T-MOBILE USA, INC.**,<br>Defendants. | CASE NO.: 2600748 5 CA01<br>CIVIL DIVISION CA-10<br><br>**JURY TRIAL DEMANDED**<br><br>$401.00 |

FILED FOR RECORD
2026 APR 13 PM 4:14
CLERK CIRCUIT & COUNTY COURTS
MIAMI-DADE COUNTY, FL

## LANDMARK COMPLAINT FOR SYSTEMIC REFORM AND EQUITABLE RELIEF

### I. JURISDICTION AND VENUE

1. This is an action for damages in excess of $50,000, exclusive of interest and costs.

2. Venue is proper in Miami-Dade County as the tortious acts and injuries occurred within this jurisdiction.

### II. STATEMENT OF FACTS

3. Defendants Google LLC and T-Mobile USA act as primary data custodians for Plaintiff's digital identity.

4. In 2022, Defendants facilitated a systemic breach of privacy by releasing Plaintiff's entire digital life to law enforcement based on a **judicially-confirmed forged consent instrument**.

5. Defendants lacked any "Client Prioritization Protocol" or manual verification standards, leading directly to Plaintiff's 1,460-day wrongful incarceration.

### III. CAUSES OF ACTION

6. **COUNT I: GROSS NEGLIGENCE & WILLFUL BLINDNESS.** Defendants prioritized corporate administrative speed over fundamental constitutional protections.

7. **COUNT II: INVASION OF PRIVACY.** Unlawful disclosure of private data based on an illegitimate and fraudulent document.

### IV. PRAYER FOR RELIEF

Plaintiff demands judgment against Defendants for **$100,000,000,000.00 ($100 Billion)**. Plaintiff further seeks **Equitable Relief** in the form of a **Preferred Equity Stake** in Defendants' corporate entities and a **Permanent Injunction** mandating the creation of a "Client Prioritization & Verification Department."

A TRUE COPY
CERTIFICATION ON LAST PAGE
JUAN FERNANDEZ-BARQUIN, ESQ.
CLERK OF THE COURT AND COMPTROLLER

Respectfully submitted,

**RHONI ROGER CASTELLON**, *Pro Se*
Address: 1000 NE 80ST Apt 3
Miami FL 33138
Phone: 305-481-7784
Email: kingme0310@gmail.com

**EXHIBIT A: CERTIFIED JUDICIAL ORDER CONFIRMING FORGERY ATTACHED**

A TRUE COPY
CERTIFICATION ON LAST PAGE
JUAN FERNANDEZ-BARQUIN, ESQ.
CLERK OF THE COURT AND COMPTROLLER

IN THE CIRCUIT AND COUNTY COURTS OF THE ELEVENTH JUDICIAL CIRCUIT OF FLORIDA

IN AND FOR MIAMI-DADE COUNTY

I, JUAN FERNANDEZ-BARQUIN CLERK CIRCUIT AND COUNTY COURT OF THE ELEVENTH JUDICIAL CIRCUIT OF FLORIDA, IN AND FOR MIAMI-DADE COUNTY, DO HEREBY CERTIFY THAT A DILIGENT EXAMINATION OF THE FELONY, MISDEMEANOR AND NON CRIMINAL VIOLATION FILES AND RECORDS IN MY OFFICE REGARDING:

NAME: CASTELLION, RHONI ROGER
DATE OF BIRTH: 10/16/1996
RACE: WHITE SEX: MALE
YEARS RESEARCHED: 2022 - 2022

INDICATES THE FOLLOWING:

| CASE NUMBER | CITATION/ ARREST / FILE DATE/ ARST DEPT | CHARGES | DISPOSITION | DISPO DATE |
|---|---|---|---|---|
| CASTELLON, RHONI ROGER | | AKA* | | |
| F22006005 | 04/01/2022 | MURDER 1ST/DWEAP/ATT | NOLLE PROS | 04/10/2026 |
| | | MURDER 1ST/DWEAP/ATT | NOLLE PROS | 04/10/2026 |
| | | MURDER 1ST/DWEAP/ATT | NOLLE PROS | 04/10/2026 |
| | | DEADLY MISSILE/THROW | NOLLE PROS | 04/10/2026 |
| | HIALEAH | | | |

PURSUANT TO FLORIDA RULES OF COURT, RULE 2.430, COURT RECORDS THAT ARE NOT PERMANENTLY RECORDED MAY BE UNAVAILABLE, OR DISPOSED OF BY THE CLERK, IN ACCORDANCE WITH THE APPLICABLE RETENTION SCHEDULE REQUIRED BY SAID RULE. (10 YEARS FOR FELONY, MISDEMEANOR AND CRIMINAL TRAFFIC VIOLATIONS IN WHICH THE DEFENDANT WAS ADJUDICATED NOT GUILTY).
PLEASE SEE FLORIDA RULES OF COURT, RULE 2.430, FOR A COMPLETE LISTING OF RECORDS RETENTION REQUIREMENTS.

PAGE: 001

A TRUE COPY
CERTIFICATION ON LAST PAGE
JUAN FERNANDEZ-BARQUIN, ESQ.
CLERK OF THE COURT AND COMPTROLLER

WITNESS MY HAND AND THE SEAL OF THE COURT AT MIAMI, MIAMI-DADE COUNTY, FLORIDA, THIS 13 DAY OF APRIL, 2026.

JUAN FERNANDEZ-BARQUIN CLERK
CIRCUIT AND COUNTY COURTS
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

PAGE: 002

BY: ______________________
DEPUTY CLERK

Deputy Clerk of the Circuit Court of
the Eleventh Judicial Circuit of Florida,
in and for Miami-Dade County

JUAN FERNANDEZ-BARQUIN CLERK OF THE COURT & COMPTROLLER MIAMI-DADE COUNTY, FLORIDA IN GOD WE TRUST

A TRUE COPY
CERTIFICATION ON LAST PAGE
JUAN FERNANDEZ-BARQUIN, ESQ.
CLERK OF THE COURT AND COMPTROLLER

Filing # 243787276 E-Filed 03/13/2026 03:46:58 PM

3/19 AL

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT OF FLORIDA IN AND FOR MIAMI-DADE COUNTY

CASE NO.: F22006005
SECTION: F001
JUDGE: JASON BLOCH

THE STATE OF FLORIDA
Plaintiff,

v.

RHONI ROGER CASTELLON
Defendant.

/

M + ot
APR 10 2026

## MOTION TO SUPPRESS EVIDENCE AND NOTICE OF HEARING

The Defendant, Rhoni Roger Castellon ("Mr. Castellon") by and through undersigned counsel, pursuant to the Fourth Amendment of the United States Constitution, article I, section 12 of the Florida Constitution, and Florida Rule of Criminal Procedure 3.190(g), hereby moves this Court to enter an order suppressing any and all evidence obtained as a result of an unlawful search and seizure, including all evidence produced in response to the warrant for Mr. Castellon's vehicle, warrant for cell-site location information (CSLI), and the warrant for google location data. In support of this Motion, Mr. Castellon states:

## FACTS

On Monday, February 14, 2022, the Hialeah Police Department responded to a strip mall located at 2025 West 62nd Street in response to reports of a shooting into a salon in the mall. Officers arrived at the scene of the shooting where they took statements from several witnesses and reviewed surveillance video of the incident. Ms. Stanton, along with the other two alleged victims of the shooting, advised officers that a man in dark attire and a mask had approached the salon where he fired several shots into the store from the sidewalk outside. Ms. Stanton described

A TRUE COPY
CERTIFICATION ON LAST PAGE
JUAN FERNANDEZ-BARQUIN, ESQ.
CLERK OF THE COURT AND COMPTROLLER

STATE OF FLORIDA, COUNTY OF MIAMI-DADE
I HEREBY CERTIFY that the foregoing is a true and correct copy of the original on file in this office 4.13.26 AD
Deputy Clerk

the individual as short, chubby, older, white male who looked like he "had a rough life" and was wrinkled. See Stanton Statement. Ms. Stanton stated that she did not see his car but that another witness had mentioned that he thought it was Chevy, either dark gray or black. See Stanton Statement. Ms. Stanton advised that she didn't see the individual get out of the car or return to it. See Stanton Statement. Another description of the suspect vehicle from a different witness was a white pickup truck. Based on statements from several different witnesses, BOLOs were issued by police both for a silver chevy sedan and for a white pickup. At the scene, Detective Vilorio recovered surveillance video of the incident as follows:

a. At 12:13 PM a 4-door silver Chevy Impala entered the parking lot of the plaza and drove in the direction of the salon. The license plate of the vehicle is not visible.

b. The car exited the frame of the video towards the other end of the parking lot, and the video does not show the vehicle again.

c. At 12:14 PM, the shooter walked from the parking lot towards the salon. The shooter opened the door to the salon, closed it, and then walked back towards the parking lot.

d. The video does not show what vehicle the shooter exited from or walked back to.

e. At 12:15 PM the shooter approached the salon from the parking lot and tried to open the door. When the door didn't open the shooter stepped back onto the sidewalk, raised a large firearm, and shot into the salon.

f. The shooter then exited the frame of the video again in the direction of the parking lot.

g. The video shows the shooter from a great distance. The only physical characteristics of the shooter shown in the video is a person in dark clothing. The shooter's gender, height, weight, body composition, or any further detail cannot be determined from the video.

*See* CCTV; *see also* Detective Vilorio Report. Detective Elosegui, the lead detective on the case, testified in deposition that he reviewed that video the day of the incident after Detective Vilorio had collected it. Detective Cuoto searched through license plate reader (LPR) photos where he

A TRUE COPY
CERTIFICATION ON LAST PAGE
JUAN FERNANDEZ-BARQUIN, ESQ.
CLERK OF THE COURT AND COMPTROLLER

discovered images of a silver 2007 Chevrolet Impala with "SS Package" trim driving in the surrounding area the day of the shooting. The LPR photos show the vehicle driving in the general direction of the incident location approximately 25 minutes before the shooting and in the opposite direction approximately 30 minutes after the shooting, at a location around 25-30 minutes from the incident location. The vehicle depicted in the LPR photos was registered to Rhoni Castellon.

The next day, detectives located Mr. Castellon's Chevy Impala parked at a residence and took pictures. They confirmed that it was a silver Chevy with the "SS" trim and a distinctive bumper sticker that said "Sheehan" located on the rear bumper underneath the "Impala" insignia. On March 24, 2022, detectives obtained a warrant to seize the vehicle. The warrant was executed on March 28, 2022, and yielded no evidence other than a statement given by Mr. Castellon when he went to the station that day. Mr. Castellon stated to police that on the date of the incident, a month and a half prior, he was asleep at his grandmothers for the day and to the best of his recollection his vehicle and phone remained at that location. On Marcy 30, 2022, and April 1, 2022, warrants for Mr. Castellon's CSLI and google location data were obtained by Detective Elosegui and Detective Mui. See Geofence Warrant and CSLI Warrant. Mr. Castellon was subsequently arrested after the CSLI and google location data were received.

All evidence stemming from the execution of the vehicle warrant, CSLI warrant, and Google geofence warrant must be suppressed as fruits of illegal searches due to material misrepresentations in each warrant by Detective Elosegui and Detective Mui, made either deliberately or with reckless disregard for the truth. The warrants also omit material facts from the investigation which if included, would negate probable cause. Without the misrepresentations and adding in the omissions, there would not have been sufficient probable

A TRUE COPY
CERTIFICATION ON LAST PAGE
JUAN FERNANDEZ-BARQUIN, ESQ.
CLERK OF THE COURT AND COMPTROLLER

cause to order the seizure of Mr. Castellon's vehicle or the disclosure of his CSLI and google location data.

## ARGUMENT AND MEMORANDUM OF LAW

Where evidence was seized pursuant to a warrant, the defendant has the burden of proof in moving for suppression of that evidence. *See State v. Lyons*, 293 So.2d 391, 393 (Fla. 2d DCA 1974). A defendant may seek suppression and challenge the veracity of a sworn statement used by police to procure a search warrant. *Franks v. Delaware*, 438 U.S. 154 (1978). In *Franks*, at issue was a search warrant for Franks' apartment issued exclusively on a detective's affidavit that led to the discovery of a white thermal undershirt, a knit hat, dark pants, a leather jacket, and a knife. *Id.* at 157. The detective was investigating a sexual assault where the assailant's clothing was described as a "white thermal undershirt, black pants with a silver or gold buckle, a brown leather three-quarter-length coat, and a dark knit cap." *Id.* at 156. In the affidavit, the detective claimed that, after he was alerted by a detention officer that Franks may have been involved in the incident, the detective had a "personal conversation" with two men at the youth center where Franks worked. *Id.* at 157. The detective claimed that one of the men advised Franks' normal dress consisted of "a white knit thermal undershirt and a brown leather jacket" and the other advised that, "in addition to the thermal undershirt and jacket, Franks often wears a dark green knit hat." *Id.* Defense counsel filed a motion to suppress the clothing and knife and attacked the veracity of the warrant affidavit. *Id.* at 158. Defense counsel asserted that he intended to call as witnesses the two men from the youth center and both would testify that neither had been personally interviewed by the warrant affiant and the information they provided was "somewhat different" than what was recited in the affidavit, and that the misstatements were included in the

A TRUE COPY
CERTIFICATION ON LAST PAGE
JUAN FERNANDEZ-BARQUIN, ESQ.
CLERK OF THE COURT AND COMPTROLLER

affidavit in bad faith. *Id.* The trial court denied the motion to suppress on the grounds that Delaware law at the time did not permit veracity challenges to alleged factual inaccuracies in search warrant affidavits, and Franks appealed.

The United States Supreme Court reversed and remanded for further proceedings without addressing the merits of Franks' proffer. The Court held,

> where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

*Id.* at 155-156. In so holding, the *Franks* Court analyzed the language of the Warrant Clause, finding that it "surely takes the affiant's good faith as its premise: '[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation . . . .'" and "when the Fourth Amendment demands a factual showing sufficient to comprise 'probable cause,' the obvious assumption is that there will be a *truthful* showing" (emphasis in original) (internal citations omitted). *Id.* at 164-165. It is to be "truthful" in the sense that the information put forth is believed or appropriately accepted by the affiant as true. *Id.* at 165. Further, "[b]ecause it is the magistrate who must determine independently whether there is probable cause, it would be an unthinkable imposition upon his authority if a warrant affidavit, revealed after the fact to contain a deliberately or reckless false statement, were to stand beyond impeachment" (internal citations omitted). *Id.* "The requirement that a warrant not issue 'but upon probable cause, supported by

A TRUE COPY
CERTIFICATION ON LAST PAGE
JUAN FERNANDEZ-BARQUIN, ESQ.
CLERK OF THE COURT AND COMPTROLLER
IN GOD WE TRUST

Oath or affirmation,' would be reduced to a nullity if a police officer was able to use deliberately falsified allegations to demonstrate probable cause, and, having misled the magistrate, then was able to remain confident that the ploy was worthwhile." *Id.* at 168.

**a. The warrants authored by Detective Elosegui and Detective Mui include several false allegations.**

**i. Suspect returned to vehicle**

The detectives falsely claimed in each of the warrants that the alleged victims saw the suspect put the firearm in the vehicle and flee the scene. The warrants allege that Ms. Stanton stated, "seconds later, the masked male returned to his vehicle, placed the rifle into the vehicle and fled the scene." See Vehicle Warrant at 5, Google Warrant at 8, and CSLI Warrant at 6. However, neither Ms. Stanton nor the other witnesses who provided sworn statements claimed that they saw the shooter return to his vehicle and put the rifle in the vehicle before fleeing the scene. In fact, the three alleged victims in the case stated that they ran towards the back of the store once the shooting began and did not see what happened afterwards.

**ii. Description of the vehicle**

The warrants all describe the potential suspect vehicle as having a distinctive bumper sticker matching that on Mr. Castellon's car which is not shown by the surveillance video at the scene. The CSLI and Google warrants state that, "Depicted in the video surveillance obtained of the motor vehicle, the motor vehicle has a distinctive "Sheehan" insignia, underneath the Impala emblem, on the driver's side, trunk." See Google Warrant at 8, and CSLI Warrant at 6. Similarly, the warrant for the seizure of Mr. Castellon's vehicle alleges that "The surveillance video also depicts a distinctive sticker and/or insignia with the word "Sheehan" underneath the Impala

A TRUE COPY
CERTIFICATION ON LAST PAGE
JUAN FERNANDEZ-BARQUIN, ESQ.
CLERK OF THE COURT AND COMPTROLLER

emblem, on the driver's side trunk of the motor vehicle involved in the shooting." See Vehicle Warrant at 5. The warrants proceed to connect the shooter's vehicle to Mr. Castellon's vehicle by referencing the "Sheehan" sticker as one of the distinctive characteristics belonging to both. This distinctive sticker on the suspect vehicle which is alleged to match the one found on Mr. Castellon's is the link that makes probable cause specific and particularized to Mr. Castellon and/or his vehicle rather than any generic Chevy Impala. However, it is clear from the surveillance video that the suspect vehicle did not have this distinctive bumper sticker or even the "SS" trim versus other potential trim for a Chevy Impala. *See* CCTV still shots.

The warrants also allege that the shooter's vehicle was a "2007 Chevrolet Impala." While the make and model of the vehicle is depicted by the surveillance video of the shooting, as well as the vehicle being an older model, the specific year of the vehicle is not discernable and was not described by any witness. This misrepresentation further purports to connect specific, identifiable characteristics from the suspected shooter's vehicle to Mr. Castellon's vehicle in a way that strengthens the suspicion that he and his car were involved beyond what the evidence supported.



A TRUE COPY
CERTIFICATION ON LAST PAGE
JUAN FERNANDEZ-BARQUIN, ESQ.
CLERK OF THE COURT AND COMPTROLLER





### iii. Description of shooter

The detectives alleged in the warrant affidavits that "[u]pon reviewing the video surveillance from the incident location of the unidentified masked male as he was shooting into the business, Mr. Castellon's physical appearance is consistent with that of the video surveillance." However, video surveillance does not depict the shooter's appearance in any detail beyond dark clothing. This conclusion drawn by the detectives is not an accurate reflection of the actual evidence in the case and further serves to provide a stronger connection between Mr. Castellon and the crime than exists. See screenshots from CCTV depicting the shooter:



As seen in the video itself and the screenshots, there are barely any distinguishable physical

A TRUE COPY
CERTIFICATION ON LAST PAGE
JUAN FERNANDEZ-BARQUIN, ESQ.
CLERK OF THE COURT AND COMPTROLLER

characteristics of the shooter that can be determined. The description of Mr. Castellon's appearance being "consistent with that of the video surveillance" while literally true, is misleading and falsely strengthens the potential connection considering the vagueness of the shooter's appearance on video.

**b. The warrants authored by Detective Elosegui and Detective Mui omit material facts.**

Florida courts have held that the *Franks* standard includes material omissions from search warrant affidavits. In *Johnson v. State*, 660 So.2d 648, 655-56. (Fla.1995), the Florida Supreme Court held,

> In harmony with the central thrust of Franks, we hold that the Franks standard applies to alleged omissions from probable cause affidavits except that (1) the reviewing court must determine whether the omitted material, if added to the affidavit, would have defeated probable cause, and (2) the reviewing court must find that the omission resulted from intentional or reckless police conduct that amounts to deception.

*See also State v. Panzino*, 583 So.2d 1059, 1062 (Fla. 5th DCA 1991) ("A fact constitutes a material omission if a substantial possibility exists that knowledge of the omission would have altered a reasonable magistrate's probable cause determination. In determining whether a material omitted fact should invalidate the search warrant the reviewing court must view the affidavit as if it had included the omitted fact and then determine whether the affidavit provides sufficient probable cause."). Therefore, the trial court "must make separate factual and legal determinations to assess the accuracy of the affidavit, thus altering the trial court's analysis of the magistrate's decision." *Pilieci v. State*, 991 So.2d 883, 894 (Fla. 2d DCA 2008),

Detective Elosegui and Detective Mui omitted material facts from the affidavits in support of the warrants for the vehicle and location data either deliberately or with reckless

A TRUE COPY
CERTIFICATION ON LAST PAGE
JUAN FERNANDEZ-BARQUIN, ESQ.
CLERK OF THE COURT AND COMPTROLLER

disregard for the truth. The detectives omitted the fact that that Ms. Stanton and Mr. Fernandez, the two victims in the case who had the best view of the shooter, described the shooter as a male in his late 30s/early 40s. This description given by Ms. Stanton both in the 911 call and in her recorded, sworn statement was also corroborated by Mr. Fernandez's sworn statement. Ms. Stanton also described the shooter as being wrinkled looking. However, Mr. Castellon was only 25 years old at the time of the shooting and is not wrinkled.

## II. Detective Elosegui and Detective Mui misrepresented facts and omitted facts in the warrants deliberately or with reckless disregard for the truth.

To determine whether evidence discovered pursuant to a warrant that contains false statements or omits facts must be suppressed under *Franks*, the next inquiry is whether the alleged false statement or omission was made knowingly, intentionally, or with reckless disregard for the truth. 438 U.S. 154 at 155-56. In *State v. Domenech*, the court analyzed a warrant where the affidavit was "replete with falsehoods" which fell along a spectrum of falsehoods made with "innocent negligence to those so irresponsible they are at least susceptible to the charge of intentionality." 387 So. 3d 404 at 413 (Fla. 2nd DCA 2024). One of the court's findings was that the detectives acted with reckless disregard by characterizing Mr. Domenech's recorded statement on a controlled call as a "confession" to downloading child pornography. *Id*. Although the court agreed that Mr. Domenech's statements were "admissions" to downloading child pornography in which guilt could be inferred, characterizing the statements as a "confession" created a specifically false impression that he had admitted guilt to a charged crime. *Id*. The court found that "[i]n light of the potential effect that an affiant's assertion that such a confession was obtained by law enforcement would likely have on a magistrate's probable cause determination, inclusion of such an inaccurate assertion in a warrant affidavit constitutes a reckless disregard for the truth." *Id* at 414. The misrepresentations were, however, not found to be material to probable cause because of

A TRUE COPY
CERTIFICATION ON LAST PAGE
JUAN FERNANDEZ-BARQUIN, ESQ.
CLERK OF THE COURT AND COMPTROLLER

sufficient additional evidence included in the affidavit which was truthfully reported. *Id* at 414-415.

In this case, the detectives' misrepresentations and omissions in the warrant were made either deliberately or at the very least with reckless disregard for the truth. Detective Elosegui, the lead detective in this case, testified in deposition that he originally wrote the portion of the affidavit that related to the facts of the investigation as included in all three affidavits in support of the warrants. He testified in deposition that he personally reviewed CCTV from the incident prior to drafting the affidavit. Detective Elosegui also testified in deposition that the distinctive bumper sticker does play a big factor in connecting Mr. Castellon to the crime and that otherwise, a silver Chevy Impala is a pretty general description. He further testified that his claim that Mr. Castellon matched the description of the shooter was based on his personal review of the video and that the only physical characteristics that matched were short and heavy set. The representations as to the shooter's return to the car with the firearm, the description of the shooter's vehicle, and the physical description of the shooter are all crucial pieces of evidence purporting to connect Mr. Castellon and his vehicle to this crime.

Both Detective Elosegui and Detective Mui had a responsibility in drafting these warrants to ensure the veracity of the information within, especially with regards to the allegations which are so central to the probable cause determination. Further, all the representations and omissions in this case are easily reviewable and verifiable by the detectives because they are based on recorded, sworn statements and CCTV. And in fact, although Detective Elosegui relied on representations from other officers he also admitted that he reviewed the video and statements himself prior to drafting the warrants. Like in *Domenech* where the Court affirmed the trial courts conclusion that "there could be no explanation for the affiant's conduct other than a reckless

A TRUE COPY
CERTIFICATION ON LAST PAGE
JUAN FERNANDEZ-BARQUIN, ESQ.
CLERK OF THE COURT AND COMPTROLLER

disregard for the truth," the misrepresentations themselves along with the importance they play in the probable cause determination demonstrate that the detectives here acted either deliberately or with reckless disregard for the truth.

## III. Detective Elosegui and Detective Mui's misrepresentations and omissions are material.

When evidence is obtained pursuant to a warrant containing false statements and omissions, courts must next determine whether those false statements and omissions were material. *See Thorp v. State*, 777 So.2d 385 (Fla. 2000). To analyze materiality, the court must excise all the false allegations from the warrant affidavit, add in the omitted facts, and determine if probable cause still exists. *Id* at 392-393. In *Thorp*, the Florida Supreme Court evaluated whether multiple misrepresentations and omissions, when considered together, were material such that they defeated probable cause in the warrant. *Id*. The court held that "once the misstated facts are redacted and the omitted facts are included, the remaining factual allegations in the amended affidavit do not establish probable cause." *Id*.

The court in *Thorpe* considered a claim in the affidavit for a warrant that the description of the person last seen walking with the victim prior to the murder was "consistent with" Thorpe and Deering (a second individual investigated in the case) to be made with reckless disregard for the truth and material. *Id* at 391-392. The witness described the potential suspect as "a white male, approximately six feet tall, seemingly thin, with medium to long dark brown hair and a dark complexion," which was not included in the warrant. *Id*. Thorpe, however, was described as "white, approximately six feet tall, 220 pounds, with blue eyes and bald/brown hair" and Deering as a "white male, approximately five feet, eight inches tall, 165 pounds, with brown eyes and brown hair." *Id*. The court found that "based on the patent differences in physical characteristics

A TRUE COPY
CERTIFICATION ON LAST PAGE
JUAN FERNANDEZ-BARQUIN, ESQ.
CLERK OF THE COURT AND COMPTROLLER

of the three persons involved and the crucial importance of this information in establishing probable cause, we find at least a patent and reckless disregard for the truth in this misstatement."

One of the omissions considered to be material by the court in *Thorpe* was the claim that a witness had described the suspect in the case as wearing a baseball cap. *Id*. Although it was true that the witness gave this description, the detectives omitted the fact that the witness made this statement while in a hypnosis therapy session and that the witness previously stated the suspect was not wearing a baseball cap, thereby misrepresenting the nature and weight of this description. *Id*. The court found the omissions and misrepresentations as to that description as both made with reckless disregard and material because "the affidavit also claims that Thorp Consistently wears baseball caps, a fact obviously intended to strengthen the connection to Thorp as the perpetrator, but which becomes irrelevant if the perpetrator was not wearing a cap on the night of the murder." *Id* at 393.

In this case, Detective Mui and Detective Elosegui misrepresented facts which are material to the warrants for the vehicle, CSLI, and google location data. First, the Court must redact the false statements from the affidavits to determine if probable cause is established from the remaining allegations. Without the false statements, the sole connection between Mr. Castellon and the shooting is that he is a white male whose registered vehicle matched a vague description of an older model silver Chevy Impala that was suspected of being the vehicle the shooter arrived at the incident location in and that it was seen around 30 minutes away from the location before and after the shooting.

Next, the Court must consider the remaining information in the warrant with the omitted facts to determine whether there is a substantial possibility that the omitted facts would have influenced the probable cause determination. *Id* at 392. When the remaining allegations are

A TRUE COPY
CERTIFICATION ON LAST PAGE
JUAN FERNANDEZ-BARQUIN, ESQ.
CLERK OF THE COURT AND COMPTROLLER



FERNANDEZ-BARQUIN CLERK OF THE COURT & COMPTROLLER MIAMI-DADE COUNTY, FLORIDA IN GOD WE TRUST

combined with the omitted facts that the shooter was described as a wrinkled man in his late 30s to early 40s as opposed to Mr. Castellon who was 25 years old and not wrinkled, there is not sufficient probable cause to justify a seizure of Mr. Castellon's car or search of his CSLI or google location data. The omission of the inconsistencies between the description of the shooter and Mr. Castellon goes directly to probable cause.

Detectives falsely claimed that Ms. Stanton stated that the shooter returned to his vehicle, put the firearm in the car, and fled. However, in her statement she says she never saw him go back to the car or flee because she was running in the opposite direction. This false claim is material because it establishes the nexus between the suspect vehicle and the evidence sought in the warrant. Without the claim that the suspect returned to his vehicle with the firearm rather than fleeing in a different vehicle or on foot or otherwise disposing of the firearm then probable cause for the vehicle containing evidence related to the crime no longer exists.

Detectives had very little detail as to the physical description of the shooter or his vehicle from the witness statements and the CCTV from the scene. The video itself shows an older model silver Chevy Impala with a spoiler and some sort of specialized trim. It does not provide a sufficient image to determine the vehicle itself is a 2007 model, it does not show the distinctive "Sheehan" bumper sticker which is emphasized by detectives as being on both the shooter's vehicle and Mr. Castellon's, or any other distinctive markings connecting the vehicle to Mr. Castellon. Like the misrepresentation about the suspect's baseball cap in *Thorpe*, the false claim of a distinctive bumper sticker and specific year of the vehicle deceptively strengthens the connection between the suspect vehicle and Mr. Castellon.

The video further depicts a blurry, distant image of the shooter in dark clothing with potentially average build and height, and even that level of detail seems speculative based on the

A TRUE COPY
CERTIFICATION ON LAST PAGE
JUAN FERNANDEZ-BARQUIN, ESQ.
CLERK OF THE COURT AND COMPTROLLER

video itself. The witness statements don't give much more detail, leaving investigators with a vague description of a male who is white, possibly Hispanic. In the warrants, the detectives' contention that Mr. Castellon's appearance was "consistent with" the shooter seen on the CCTV was patently misleading given the incredibly vague nature of the depiction of the shooter and their failure to include any more detail other than that conclusory claim. This deceptive claim creates the false impression of a meaningful connection between the shooter and Mr. Castellon where there is none. The detectives then furthered that misrepresentation by omitting these inconsistencies in the description of the shooter and Mr. Castellon's appearance. Given that the description of the vehicle and the description of the shooter are the only pieces of evidence that purport to connect Mr. Castellon to the crime, more detail is necessary to establish probable cause. The omissions therefore are material to all three warrants and all evidence collected pursuant to them must be suppressed.

**IV. All evidence obtained pursuant to the warrants for Mr. Castellon's vehicle, google location information, and CSLI must be excluded as fruit of the poisonous tree.**

Any evidence obtained from an unlawful search is inadmissible under the exclusionary rule requiring courts to exclude evidence gathered by violating a defendant's Fourth Amendment rights. *Terry v. Ohio*, 392 U.S. 1, 12-13 (1968); *Mapp v. Ohio*, 367 U.S. 643, 648 (1961) (holding that the federal exclusionary rule applies to the states as well)). The good faith exception to the exclusion rule specifically does not apply to situations such as the one presented in *Franks* "where the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth. *United States v. Leon*, 468 U.S. 897 (1984); *United States v. Martin*, 297 F.3d 1308, 1313 (11th Cir.2002). Thus, an affidavit deemed facially sufficient to establish probable cause necessary to

A TRUE COPY
CERTIFICATION ON LAST PAGE
JUAN FERNANDEZ-BARQUIN, ESQ.
CLERK OF THE COURT AND COMPTROLLER

issue the warrant but which the defendant establishes was based upon law enforcement's knowing or reckless and materially false statements or omissions will require the application of the exclusionary rule. *Pilieci v. State*, 991 So.2d 883, 898 (Fla. 2d DCA 2008). Therefore, all evidence stemming from the warrants in this case, including Mr. Castellon's statement, CSLI records, and google location information must be suppressed due to the material misrepresentations and omissions by Detective Mui and Detective Elosegui deliberately or at the very least, with reckless disregard for the truth.

**CERTIFICATE OF SERVICE**

I CERTIFY that a copy of this motion was served electronically upon the Office of the State Attorney, 1350 NW 12th Ave, Miami, FL 33136 on March 13, 2026.

Respectfully submitted,

Carlos J. Martinez,
Public Defender
Eleventh Judicial Circuit of Florida
305.545.1600
felonyservice@pdmiami.com

/s/ Marissa Goldstein
Assistant Public Defender
Florida Bar No.: 1018012

STATE OF FLORIDA, COUNTY OF DADE
I HEREBY CERTIFY that the foregoing is a true and correct copy of the original on file in this office May 21 AD 20 26
Juan Fernandez-Barquin, Esq.
Clerk of the Court and Comptroller
Deputy Clerk /s Juan Fernandez-Barquin
35393727
JUAN FERNANDEZ-BARQUIN CLERK OF THE COURT & COMPTROLLER MIAMI-DADE COUNTY, FLORIDA IN GOD WE TRUST